IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

| | | |
|---|---|---|
| KEOSHA HORNE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 5:09-CV-00042-H |
| v. | ) | |
| | ) | (Wilson, N.C. Litigation) |
| SMITHFIELD PACKING COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| ANGELINA MITCHELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:08-CV-00182-H |
| | ) | |
| SMITHFIELD PACKING COMPANY, INC., | ) | (Kinston, N.C. ("K-1") Litigation) |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| JAMES HARRIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:09-CV-0041-H |
| | ) | |
| SMITHFIELD PACKING COMPANY, INC., | ) | (Kinston, N.C. ("K-2") Litigation) |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF COLLECTIVE ACTION SETTLEMENT

### I. INTRODUCTION

Plaintiffs Keosha Horne, James Harris, and Angelina Mitchell ("Plaintiffs") on behalf of

all those who are similarly situated as defined below, and Smithfield Packing Company, Inc., by

and through their undersigned counsel, file this Joint Motion and Memorandum in Support of the Parties' Joint Motion for Preliminary Approval of Class and Collective Action Settlement and in support show as follows:

After years of discovery, motion practice, extensive negotiations, document production, as well as extensive data analysis and review, all culminating in a mediation with Hunter Hughes, which was followed by three weeks of active negotiations, the Plaintiffs and Defendant Smithfield Packing Company, Inc. (collectively, the "Parties") have reached a settlement, subject to Court approval, of all claims at issue in these cases memorialized in the attached Settlement Agreement. The settlement was reached in order to settle and resolve *bona fide* disputes between the Parties, including whether Defendant's payment practices violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage and Hour Act ("NCWHA").

The gross value of the settlement will be dependent upon claimant participation and includes attorneys' fees and costs detailed further below. As described below, the settlement provides that each member of the settlement class who complies with the terms of the Settlement Agreement will receive a payment based upon the number of weeks that he or she worked in a covered job (*i.e.*, hourly production and support) during his or her relevant claim period. The gross amount of the settlement and the potential compensation for those members of the Settlement Class who choose to participate represents a fair, reasonable, and adequate compromise of the claims asserted in this lawsuit and is a result of the Parties' good faith bargaining. For the reasons discussed below, the Parties now seek the Court's approval of this settlement.

2

# II. ARGUMENT

## A.    Background

These are lawsuits to recover alleged unpaid wages brought under the FLSA and the NCWHA. These lawsuits were filed on behalf of similarly situated current and former hourly employees of three of Defendant's pork processing facilities in Kinston and Wilson, North Carolina (the "K-1," "K-2," and "Wilson" facilities). Plaintiffs allege that Defendant failed to compensate them for work they performed on a daily basis "off the clock," including time spent obtaining, preparing, donning, doffing and sanitizing personal protective equipment and clothing and associated walking. Plaintiffs allege these unpaid work activities take place before and after paid time. Plaintiffs sought damages for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and litigation costs under the FLSA and damages for unpaid wages, liquidated damages, interest, attorneys' fees, and litigations costs under the NCWHA. A Rule 23 opt out class was certified in each case and appropriate notice was sent to petition Class Members. Class notice was also authorized by the Court pursuant to 29 U.S.C. § 216(b) and appropriate opt in notices were sent to Class Members. The settlement provides for sending additional notice to individuals who have been hired since the original notices were sent.

The settlement applies to the following individuals:

> *Horne* Action - All current and former non-exempt, hourly production and support employees who worked at Smithfield Packing Company, Inc.'s Wilson, North Carolina facility at any period of time from February 2, 2007 to the present and who were paid on a "gang-time" or "scheduled-time" basis, except any individuals who have submitted Opt Out forms pursuant to the Court's certification order.

> *Mitchell* Action - All former production and support employees who were employed by Smithfield Packing Company, Inc. as non-exempt, hourly employees at the "K-1" Kinston, North Carolina at any period of time from October 24, 2005 through May 31, 2008,

who were paid on a "gang-time" or "scheduled-time" basis, except any individuals who have submitted Opt Out forms pursuant to the Court's certification order.

*Harris* Action - All current and former non-exempt, hourly production and support employees who worked at Smithfield Packing Company, Inc.'s Kinston, North Carolina K-2 facility at any period of time from March 19, 2007 to the present and who were paid on a "gang-time" or "scheduled-time" basis, except any individuals who have submitted Opt Out forms pursuant to the Court's certification order.

## B.    Discovery and Settlement

The Parties conducted extensive discovery in these cases. The Parties exchanged a substantial amount of documentation and information concerning the claims at issue and the defenses asserted. Plaintiffs' counsel and their experts have conducted plant inspections and reviewed and analyzed millions of lines of data related to Defendant's payment and timekeeping systems. Depositions were taken of Plaintiffs and key management representatives in each case. Time study experts were retained by Plaintiffs in the *Horne* and *Harris* cases and Defendant who performed on-site analyses of the alleged uncompensated work activities. Experts were also retained by both parties who analyzed voluminous payroll and timekeeping records and produced detailed analyses. Defendant additionally retained a statistician to analyze Plaintiffs' data and expert reports. The Parties' time study experts, and Plaintiffs' damages expert, were deposed by opposing counsel.

The Parties voluntarily mediated these cases with Hunter Hughes beginning on September 24, 2013, in Atlanta, Georgia. Mr. Hughes is a well-respected FLSA mediator with extensive experience in mediating cases involving allegations similar to those in these cases. Prior to mediation, the parties exchanged payroll and timekeeping information in order to facilitate productive discussions. Following one day of mediation, the parties engaged in further

4

discussions over a period of approximately three weeks, facilitated by Mr. Hughes. The Parties reached a settlement which was ultimately memorialized in the Settlement Agreement attached hereto as Exhibit 1.

## C.  Terms of the Settlement

Pursuant to the Parties' Agreement, and subject to Court approval, participants will be eligible to receive settlement amounts that will vary, depending upon the number of weeks they worked in covered jobs during the relevant time period. *See* Exhibit 1. This settlement also provides for attorneys' fees and costs, including those fees and costs incurred by Plaintiff's counsel in connection with the preparation of this motion and those costs associated with hearings or actions taken in order to finalize this settlement. The settlement does not include the administrative costs associated with the issuance of notice, the processing of settlement checks or the employer's share of any applicable payroll tax withholdings. These amounts will be borne by the Defendant.

The settlement covers all of the workweeks worked by the members of the Settlement Class in covered jobs during the relevant time period. The relevant time period has been defined by the Parties for the *Horne* class (Wilson) members to mean:

> From February 3, 2007 until the earlier of (i) the date on which the class member's employment in the relevant Smithfield plant terminated or (ii) the date the court preliminarily approves the settlement.

*See* Exhibit 1 at ¶ 1.

For the *Harris* class (Kinston II) members, the relevant time period has been defined by the Parties to mean:

> From March 19, 2007 until the earlier of (i) the date on which the class member's employment in the relevant Smithfield plant

terminated or (ii) the date the court preliminarily approves the settlement.

*Id.*

For the *Mitchell* class (Kinston I) members, the relevant time period has been defined by the Parties to mean:

> From October 24, 2006 until the earlier of (i) the date on which the class member's employment in the relevant Smithfield plant terminated or (ii) the date the court preliminarily approves the settlement.

*Id.*

As part of the settlement, the Parties seek permission to mail a copy of the Notice and Claim Form attached as Exhibit 2 to current and former processing line employees who were employed at one of the three facilities and who filed an opt-in form in the FLSA action/or are members of the Rule 23 class in each case. The Notice and Claim form advises the Settlement Class Members of this settlement and the steps that must be taken by them in order to recover their share of the settlement. The Notice will be provided in both English and Spanish. Additionally, individuals who have been hired into a position within the respective class definition since the first opt out notice was sent in each case ("Subsequent Hires") will be provided a Notice Form which gives them information about their opportunity to opt out, as well as an Opt Out Form and a Claim Form. Copies of these documents are attached as Exhibit 3.

1.  <u>Compensation of the Class Members</u>

Under the terms of the settlement, Defendant will pay each participating member of the Settlement Class, *e.g.*, a Class Member who timely submits a claim form, a proportionate share of the settlement based upon the number of weeks worked during the relevant claims period.

Plaintiffs have negotiated the right to void the entire Settlement Agreement if less than thirty percent (30%) of settlement funds are claimed by Class Members. This provision is

6

intended to ensure at least a minimum level of participation by eligible Class Members. The Parties have agreed that Defendant may void the entire Settlement Agreement if more than seventy percent (70%) of the settlement funds are claimed by Class Members. In exchange for this option, Defendant agreed to a larger Settlement Fund than it otherwise would have been willing to make. As a result, those individuals who submit a claim will receive a larger payment than Defendant otherwise would have been willing to make. The deadline for exercising the option to void the settlement by either party will be thirty (30) calendar days after the deadline has passed for class members to timely submit Claim Forms under this Settlement Agreement.

2.    <u>Notice process</u>

Following approval, the Parties have agreed to send the appropriate notice materials as described above ("Notice and Claim Forms"). . *See* Exhibits 2, 3. The Parties have agreed that the Notice and Claim forms will be sent to the last known address of each eligible person (existing Class Member or Subsequent Hire). In the event any notice and claims forms are returned as undeliverable, the Claims Administrator will update theperson's address through the National Change of Address program or other skip trace method and resend the notice to any updated address obtained.

The Notice and Claim Form explains the settlement and the steps that must be taken in order to receive compensation from the settlement fund. The Notice and Claim Form will also contain an explanation of how the individuals' damages will be determined. Members of the Settlement Class will have sixty (60) days from the date of mailing to submit the Claim form to the Class administrator selected by the Parties

Once the notice and claim period has closed, the Parties will ask that the Court enter a Final Judgment dismissing this lawsuit with prejudice. All of the Plaintiffs and Class Members,

including Subsequent Hires who do not timely opt out, will be bound by the Final Judgment and will have their claims dismissed regardless of whether they submitted a claim form or not. Fourteen (14) days following the Settlement Effective Date, Defendant will deliver the settlement proceeds to the Claims Administrator who will distribute the proceeds within thirty (30) days of the Settlement Effective Date. Members of the Settlement Class who participate in the settlement will have 120 days to cash their settlement check. The settlement agreement provides for the Class Administrator to re-mail any check returned due to a change of address after performing a skip trace to determine an updated address.

     3.    <u>Scope of release</u>

     Individuals who accept compensation as part of this settlement process, release any and all wage and hour claims they have or may have, including claims under the FLSA, the NCWHA, and any other state, federal, or local law governing the payment of wages. For the Class Members who have not opted in under the FLSA and do not return a Claim Form, they will release any and all wage and hour claims they have or may have, other than those under the FLSA. The settlement will release and bar as described in subparagraphs 18.b and 18.c of the Joint Stipulation of Settlement and Release the Claims of the Class Members who have previously opted in under the FLSA even if they do not return a Claim Form. The preclusive effect of this settlement on any future FLSA claims by Class Members who have not opted in under the FLSA and do not return Claim Forms would be determined by the court in which those claims are brought.

     4.    <u>Attorneys' fees and costs</u>

     The Settlement Agreement provides for Defendant to pay a total of up to, but not more than, $800,000.00 in attorneys' fees and costs to Plaintiffs, subject to Court approval. As shown

in the contemporaneously filed Motion for Approval of Attorneys' Fees and Costs, this amount is fair, reasonable, adequate, and represents a substantial reduction in both time and applicable hourly rates.

## D. Standard of Review

The Parties are seeking Court approval of this proposed settlement. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel). In considering the Parties' Motion, the Court is required to "determine that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. "[T]he district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8, 66 S. Ct. 925 (1946)) (emphasis added).

Before approving a proposed class action settlement as required by Fed. R. Civ. P. 23(e) and *Brooklyn Savings Bank*, 324 U.S. 697, the court must examine "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs;" and finally, (5) "the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential

recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 U.S. Dist. LEXIS 89136, at *29 (E.D. Va. Sept. 28, 2009)[1]; *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) (affirming the district court's approval of a class action settlement where, as is the case here, the settlement agreement satisfies the factors the court must evaluate and was the product of the parties' good faith, arm's length bargaining). To determine whether a proposed class action settlement is adequate, the court should evaluate:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*See Scardeletti v. Debarr*, 43 F. App'x 525, 528, 2002 U.S. App. LEXIS 15940, **5 (4th Cir., Aug. 8, 2002) (quoting *In re Jiffy Lube*, 927 F.2d at 159).

Finally, it is axiomatic that the law favors settlement. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (discussing the strong public policy favoring settlement agreements, stating that "courts should approach them with a presumption in their favor."). Moreover, public policy is best served by parties' settling complex litigation, and compromise in complex cases is encouraged by the courts. *See* 4 William Rubenstein et al., Newberg on Class Actions § 11.41 (4th ed. 2002). Consequently, class action settlement agreements that result from good faith, arm's length negotiation between the parties, like the agreement at issue in this case, are presumptively fair, and the court should begin its analysis with the presumption that the agreement should be approved. *Id.*

The Parties believe that the terms and conditions of this Settlement are fair, reasonable,

---

[1] Unpublished opinions are attached hereto as Exhibit 4.

adequate, beneficial, and in the best interests of the Settlement Class.

      1.    <u>The extent of discovery that has taken place.</u>

As noted above, this proposed settlement was reached following extensive discovery, analysis by multiple experts retained by the Parties, and lengthy negotiations during which the Parties thoroughly discussed their respective positions and the legal and factual merits of the claims asserted. The Parties exchanged substantial amounts of discovery and documents concerning Defendant's practices and procedures, payroll and timekeeping policies and the equipment used by the employees. The Parties also conducted numerous depositions of employees, corporate personnel, and experts. Finally, both Parties had experts conduct formal time studies and analysis concerning the activities at issue, and prepared detailed damages analyses.

Accordingly, because of the investigation and substantial discovery undertaken by both Parties prior to the mediation, all Parties had ample opportunity to satisfy themselves that they were adequately informed on all issues and capable of reaching a fair and reasonable settlement of this litigation.

      2.    <u>The stage of this proceeding including the complexity, expense and likely duration of the litigation.</u>

There can be little dispute that this litigation was complex, expensive and long lasting. Both sides expended tremendous effort and expense in support of their respective positions. Without a settlement, there is no doubt that the Parties would have continued to litigate these claims in an equally tenacious manner for an extended period of time. Indeed, one only needs to review the numerous docket entries in these proceedings to recognize that this litigation was complex and highly contested. Key issues which remained to be resolved in this case, absent settlement, are detailed in Section III and IV below. As such, the complexity, expense and likely

duration of litigation in these cases weigh in favor of this Court finding that the proposed settlement herein is fair and reasonable. Had the Parties not resolved this matter, these cases would have proceeded to further discovery, summary judgment, and decertification motions and possibly trial.

3. <u>The absence of fraud or collusion in the settlement.</u>

"The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 725 (E.D. La. 2008) (citing *Camp v. The Progressive Corp.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172, *24 (E.D. La. Sept. 23, 2004) (unpublished); 4 William Rubenstein et al., <u>Newberg on Class Actions</u> § 11.51 (4th ed. 2002)). As noted above, the Parties engaged in extensive discovery in this action, took numerous depositions, and analyzed voluminous data. Moreover, the settlement was reached through good faith negotiations by attorneys who are familiar with the facts of this case, as well as the applicable legal standards and with the assistance of a qualified mediator. No fraud or collusion occurred between the counsel in reaching the settlement.

4. <u>The experience of counsel who have represented the Plaintiffs.</u>

Attorneys for Plaintiffs are all experienced wage and hour and class action attorneys who have extensive experience in complex litigation. Plaintiffs' counsel have been actively involved in similar litigation involving alleged violations of the FLSA by food processing companies. Plaintiffs' counsel submit that the proposed settlement is fair and reasonable. Counsel have exchanged voluminous data, both through discovery and voluntarily, and have undertaken frank discussions regarding their respective positions in these cases.

5. <u>The probability of Plaintiffs' success on the merits.</u>

There are numerous factual disputes and Defendant has asserted various legal arguments that Plaintiffs must address in each case. These are discussed in detail in Sections III and IV below.

## IV. FACTUAL LIMITATIONS AND OBSTACLES TO PLAINTIFFS' RECOVERY

There are significant factual issues which would be subject to dispositive motions and possibly trial in this case. The Parties have considered the costs and delays related to resolving these issues in negotiating this settlement.

A.   *Mitchell v. Smithfield*

1.   Defendant contends that the K-1 facility was a non-slaughtering facility in which employees were exposed to different conditions than a typical slaughtering operation.

2.   The K-1 facility employed about 471 employees at all relevant times. As such, it is a smaller facility than others that have been involved in similar litigation.

3.   Knives and other cutting instruments were not prevalent at the K-1 facility and for many employees, cut resistant protective clothing was unnecessary.

4.   Defendant contends that Plaintiffs will experience difficulty establishing any willful violation that would entitle Plaintiffs to a three-year statute of limitations. While Plaintiffs assert that there are differences in this case, Smithfield prevailed on this issue in previous cases on previous Smithfield cases before Judge Howard. (*Hosler v. Smithfield, Parker v. Smithfield.*)

5.   A collective bargaining agreement was in place at all relevant times. Defendant contends that pursuant to this agreement, Smithfield maintained a practice of compensating employees for donning, doffing, and related activities. Defendant further contends that Plaintiffs' FLSA claims are therefore precluded by Section 203(o) of the FLSA. While Plaintiffs assert that there are differences in this case and the collective bargaining agreement here that would not preclude these claims under Section 203(o), in a previous case (*Hosler v. Smithfield*), Smithfield obtained summary judgment on this issue before Judge Howard.

6.   Smithfield contends that it paid its production employees adequate additional compensation for donning, doffing, and related activities at all relevant times, while Plaintiffs assert that Smithfield did not fully compensate all employees for donning, doffing and related activities. Smithfield contends that it has paid all or

essentially all production employees 5 minutes of paid time per day for donning, doffing, and related activities at all times relevant to this case; Plaintiffs contend that some employees were not so paid. After the *Alvarez* decision, Smithfield assessed its donning and doffing practices and decided to pay those additional minutes. Smithfield contends that these additional minutes of pay were implemented to compensate employees for donning, doffing, and related activities, including related washing and sanitizing of sanitary and protective items. Smithfield implemented this change in November 2006. Smithfield made retroactive lump sum payments, though Plaintiffs claim that there were some employees who did not receive them. Most of the retroactive payments were paid in November 2006. As discussed below, the relevant period of limitations is no earlier than October 24, 2005. Smithfield contends that there is no relevant time period in which Smithfield did not compensate its employees at the K-1 facility for donning, doffing, and related activities.

**B.**     *Horne, et al v. Smithfield Packing Co., Inc.*

1.      Smithfield contends that it pays its production employees adequate additional compensation for donning, doffing, and related activities while Plaintiffs assert that Smithfield did not fully compensate all employees for donning, doffing and related activities. Specifically, Smithfield pays 5 additional minutes of compensation to all or essentially all production employees each day for donning, doffing, and related activities at the Wilson facility; Plaintiffs contend that some employees were not so paid. After the *Alvarez* decision, Smithfield assessed its donning and doffing practices and decided to pay those additional minutes. Additionally, Smithfield contends that it pays employees to their out punch at the Wilson facility to compensate for post-shift activities while Plaintiffs contend that certain uncompensated work continues after punch out. Smithfield implemented these additional minutes of pay to compensate for donning, doffing, and related activities, including related washing and sanitizing of sanitary and protective items. Smithfield implemented this change in 2007. Smithfield made retroactive lump sum payments, though Plaintiffs claim that there were some employees who did not receive them. At all relevant times, Smithfield contends that it paid additional compensation for donning, doffing, and related activities.

2.      Smithfield contends that the Wilson facility is a small non-slaughtering facility where over the course of three shifts there are only 453 employees who are exposed to different conditions than a typical slaughtering operation.

3.      Smithfield contends that employees are permitted to wear many of their sanitary and protective items to and from home.

4.      Few employees of the Wilson facility use knives or cut protective equipment.

5.      Smithfield contends that no employees of the Wilson facility are required to use lockers, and not all employees have lockers.

14

6.      Smithfield contends that Wilson employees are not required to change shoes on Smithfield's premises.

7.      Smithfield contends that Wilson employees wear limited protective clothing. Employees at the Wilson facility wear hair nets, beard nets (if they have facial hair), ear plugs, hard hats, and smocks.   In addition, some wear latex/nitrile/rubber gloves, cotton gloves, safety glasses, or plastic sleeves, aprons, depending on their jobs.   Two employees wear cut resistant gloves and two or three employees wear belly guards.  Employees may acquire aprons, gloves, hair nets, beard nets, and ear plugs on the production floor.

## C.   *Harris, et al. v. Smithfield Packing Co., Inc.*

1.      Smithfield contends that it pays its production employees adequate additional compensation for donning, doffing, and related activities at the K-2 facility while Plaintiffs assert that Smithfield did not fully compensate all employees for donning, doffing and related activities.   Specifically, Smithfield pays 5 additional minutes of compensation to Raw Side Production employees and 8 additional minutes of compensation to RTE side employees each day for donning, doffing, and related activities.  After the *Alvarez* decision, Smithfield assessed its donning and doffing practices and decided to pay those additional minutes.   Smithfield contends that these additional minutes of pay were implemented to compensate employees for donning, doffing, and related activities, including related washing and sanitizing of sanitary and protective items.   Smithfield contends that it implemented this change and has paid for donning and doffing activities at all times that the K-2 facility has been operating.

2.      Smithfield contends that the K-2 facility is a small non-slaughtering facility where over the course of two shifts, only 235 employees worked during most of the time period relevant to this case and they are exposed to different conditions than a typical slaughtering operation.

## V. TO RECOVER IN EACH OF THREE CASES, PLAINTIFFS WOULD BE REQUIRED TO LITIGATE AND OVERCOME SIGNIFICANT LEGAL OBSTACLES

The negotiations that resulted in this settlement included candid discussions between counsel for the Parties regarding the legal issues.  The strength and weaknesses of the Parties' positions on these issues and the cost, delay, and other expenses associated with resolving these issues has been taken into account in negotiating this settlement.  The Parties recognize that the outcome of these issues is uncertain.  The Parties have especially considered the fact that some

recent donning and doffing cases which have been tried to a jury have resulted in a defense verdict. For example, in *Guyton v. Tyson Foods, Inc.*, No. 3:07-cv-00088-JAJ-TJS, (S.D. Iowa, April 2, 2013) (unpublished), a jury returned a verdict in favor of the defendant on similar claims arising under the FLSA and the Iowa Wage Payment and Collection Law. The district court upheld this verdict, denying the plaintiff's motion for judgment as a matter of law or in the alternative, for a new trial on April 2, 2013. Similarly, in *Edwards v. Tyson Foods, Inc.*, No. 4:08-cv-00113-JAJ-TJS (S.D. Iowa, Oct. 30, 2013) (unpublished), the court granted the defendant's motion for summary judgment on both FLSA claims and claims made under the Iowa Wage Payment and Collection Law, specifically finding that the state law claims were preempted by Section 301 of the Labor Management Relations Act.

## A.    Issues Common to All Three Cases

There are a number of legal issues that are common to all three cases, which Plaintiffs will be required to overcome in order to recover in each case. The issues that are unique to each case are discussed in Sections IV.B., C. and D. below.

1.    There is a disputed issue about whether overtime is  recoverable under § 95-25.6 of the NCWHA.

There is a disputed issue about whether the "payday statute" provides a means for the Plaintiffs to recover time-and-a-half overtime pay. Defendant contends that there is no authority for that proposition. Defendant further contends that any attempt to recover the half-time premium required by the FLSA would be precluded by the principle of obstacle preemption, relying upon *Anderson v. Sara Lee,* 508 F.3d 181, 191-2 (4th Cir. 2007). Defendant contends the "payday" provisions of the same NCWHA were never intended to create a universal cause of action for the overtime premium regardless of the terms and limits of the separate overtime statute.

2.    There is a disputed issue about Plaintiffs' claims for straight time under § 95-25.6.

There are disputed issues about whether the payday statute gives an employee a claim to recover amounts that are more than the employer agreed to pay. Defendant contends that the payday statute only authorizes a claim to enforce an employer's agreement to pay for particular activities; it does not authorize a jury to decide in the first instance to impose additional obligations on the employer to pay for activities for which it had never agreed to pay. Citing *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 144-45 (2004), *Whitehead v. Sparrow Enter.*, 167 N.C. App. 178, 187-88 (2004), and *Leverette v. Labor Works, Int'l LLC*, 180 N.C. App. 102, 108 (2006).

3.    There are disputed issues about the application of "relation back" principles in all three cases.

The issue of "relation back" has significance for the *Mitchell* case and will also be argued to limit Plaintiffs' claims in *Harris* and *Horne*. The *Mitchell* case originally was filed in October 2008 as an FLSA case with only three named employees. On November 6, 2009, Plaintiffs filed their first amended complaint and first alleged Rule 23 class claims based on the North Carolina "payday" statute. There is a disputed issue about whether the new claimants who were not in the original case "relates back" under Fed. R. Civ. P. 15 to their original filing in October 2008, which would extend the claim period to approximately 17 months rather than only 6 months. Defendant contends that Rule 15 does not allow a time barred claim of one person or a putative class to be resuscitated simply by having that person or class join a lawsuit filed by a different person, relying upon authorities such as *Cliff v. Payco Am. Credits, Inc.*, 363 F.3d 1113, 1132 (11th Cir. 2004), *Harris v. Unarco Material Handling*, 596 F.3d 3113, 3118 (6th Cir. 2010), and *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995). The Defendant contends that the

claims of the new Plaintiffs (that is, the Rule 23 classes) do not relate back in the *Mitchell*, *Harris* and *Horne* cases.

      4.   <u>The K-1 plant closed before the *Mitchell* lawsuit was filed so no time study is available and Plaintiffs would have to rely on what they claim is "representative evidence," which Defendant challenges.</u>

Because the K-1 plant closed before the lawsuit originally was filed in October 2008, Plaintiffs were unable to conduct a time study analysis using an expert, but instead would rely on evidence that Plaintiffs claim is representative. Defendant disputes whether Plaintiffs' alleged "representative" evidence is representative, valid, or admissible, and has designated an expert witness who will testify that the "survey" on which Plaintiffs rely does not satisfy established standards for valid surveys. Defendant has also offered an expert report stating that for the activities involved (donning, doffing, and walking), the median time would be between 5.6 and 10.1 minutes. Of course, because of 29 U.S.C. § 203(o), Defendant contends that the time in question is not "hours worked" and that the custom, policy and practice under the collective bargaining agreement to pay 5 minutes per day for such activities ends the argument.

If this litigation were to proceed, it would be necessary to litigate significant *Daubert* motions in each of these cases—the outcome of which would be uncertain.

Defendant further contends that Plaintiffs' expert reports include idle time for which Plaintiffs cannot properly seek compensation. Defendant relies on *Perez v. Mountaire Farms*, 610 F. Supp. 2d 499, 508, *aff'd*, 650 F.3d 350, 372 (4th Cir. 2011), in which the court, in a bench trial, excluded idle time associated with the donning and doffing activities of some individuals from the compensation found to be properly recoverable. Defendant in this case contends that Plaintiffs' expert reports include significant periods of similar idle time in the estimates presented.

5.     <u>Defendant is expected to file motions for decertification of the Class in each case.</u>

If these cases were to proceed, Defendant would seek decertification of the classes on the principal ground that the claims pled by Plaintiffs are highly individualized. *See, e.g., Espenscheid v. DIRECTSAT USA, LLC,* 708 F. Supp. 2d 781 (W.D. Wis. 2010), *aff'd,* 705 F.3d 770 (7th Cir. 2013) (decertifying claim because dependent on individualized circumstances, not common class-wide evidence).

6.     <u>Defendant contends that Plaintiffs cannot establish willfulness, and that they are therefore not entitled to a three-year limitations period under the FLSA in any of these cases.</u>

Defendant contends that the applicable statute of limitations in these cases is limited to two years. The FLSA provides two different statutes of limitations, depending upon the nature of the alleged violation. 29 U.S.C. § 255(a). A two-year statute of limitations applies to ordinary violations of the FLSA. *Id.* If the employee proves that the violation was willful, a three-year statute of limitations applies. *Id.*

The Court has previously held that despite the changing landscape of the FLSA, Smithfield made significant efforts to comply with the FLSA in light of ongoing case law developments. *Hosler v. Smithfield Packing Co.,* No. 7:07-cv-166, 2010 U.S. Dist. LEXIS 87832 *9 (E.D.N.C. Aug. 17, 2010) (unpublished) ("there is simply no evidence before the court to support a finding that defendant knew, or acted with reckless disregard as to, whether it was in compliance with the FLSA. To the contrary, the evidence of record suggests that defendant was making efforts to comply with the FLSA. Indeed, plaintiffs concede that defendant's decision was 'an attempt to comply with changing interpretations of the FLSA'"); *Parker v. Smithfield Packing Co.,* No. 7:07-cv-176, 2010 U.S. Dist. LEXIS 101908 *3 (E.D.N.C. Aug. 17, 2010) (unpublished). Defendant contends that the Court's prior rulings in other litigation, Smithfield's

efforts to comply with the FLSA, and the ongoing debate among the courts regarding application of the FLSA conclusively demonstrate that only a two-year limitations period could apply in these cases according to Defendant.

7.    <u>Defendant contends that it is entitled to offsets and set offs which would reduce Plaintiffs' claims.</u>

Smithfield contends that it compensates its employees in excess of what the FLSA requires. For example, Smithfield counts holiday pay toward hours worked for purposes of computing overtime. Also, employees who are called to report to work outside their regularly scheduled hours receive a minimum of four hours of pay, even if fewer than four hours are worked. K-1 employees who worked on Sundays were paid a premium. Also, the payroll records given to the Plaintiffs in advance of mediation show that some employees have been paid double overtime. Smithfield contends that it is entitled to offsets for these premiums paid and overtime paid for fewer than 40 hours worked, under 29 U.S.C. § 207(h)(2).

8.    <u>Smithfield contends that donning and doffing protective and sanitary items (similar to the items used by employees in this case) is not compensable.</u>

Defendant contends that some courts have held that donning and doffing non-unique items is not compensable because it is not work as defined by the FLSA. The Supreme Court has defined "work" as the "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).

In making this argument, Defendant relies upon, *inter alia, Reich v. IBP,* 38 F.3d 1123, 1125-26 (10th Cir. 1994), *Jenkins v. Harrison Poultry, Inc.*, No. 2:07-cv-58, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. July 29, 2008) (unpublished), *White v. Tip-Top Poultry*, No. 4:07-cv-101, 2008 U.S. Dist. LEXIS 110598, (N.D. Ga. July 7, 2008) (unpublished), *Gorman v.*

*Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007), *Pirant v. United States Postal Serv.*, 542 F.3d 202, 208-09 (7th Cir. 2008), and *Alford v. Perdue Farms*, No. 5:07-cv-87, 2008 U.S. Dist. LEXIS 24948, at *18-19 (M.D. Ga. 2008) (unpublished). Defendant contends that because Plaintiffs' claims relate to the donning and doffing of ordinary items, they fail under existing precedent. Smithfield contends that it is not required to compensate its employees for the time spent donning and doffing ordinary items at issue in these cases.

   9.      Defendant contends that Plaintiffs cannot recover for waiting or walking that
           precedes compensable work or follows the end of compensable work.

   Defendant contends that waiting does not constitute work under the FLSA. Defendant relies upon *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1477 (5th Cir. 1990), in making this argument. Defendant also contends that the Fourth Circuit Court of Appeals in *Perez v. Mountaire Farms* affirmed the ruling by the trial court that idle time that the employee spent after donning but before production work was not compensable. *Perez v. Mountaire Farms*, 650 F.3d at 372; *See also Whitten v. City of Easley*, 62 Fed. Appx. 477, 479-80 (4th Cir. 2003). Defendant contends that any "wait time" between donning and the start of shift that is spent in the break room, bathroom, or locker room is of no benefit to Smithfield and is therefore not compensable. Similarly, according to Defendant's argument, any walking activities which precede compensable work at the beginning of the day or follow compensable work at the end of the day are not compensable. The Portal Act clearly excludes such activities as preliminary and postliminary. 29 U.S.C. § 254(a).

   10.     Defendant contends that its *de minimis* defense bars Plaintiffs' claims.

   Smithfield contends that the donning and doffing of items at issue here falls within the classification of *de minimis*. Defendant relies on authorities such as *Myers v. Baltimore County, Maryland*, 50 Fed. Appx. 583, *4 n. 6 (4th Cir. 2002), *Alvarez v. IBP*, 339 F.3d 894, 902-03 (9th

Cir. 2003), *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006), *Fast v. Applebee's Int'l, Inc.*, 502 F. Supp. 2d 996, 1006 (W.D. Mo. 2007), and *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333-34 (10th Cir. 1998), Defendant further contends that it would be unrealistic and impractical to capture the small amount of time each individual spends each day donning and doffing the non-unique gear at issue, relying on *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946), *Du Pont v. Harrup*, 227 F.2d 133, 135 (4th Cir. 1955), *Jenkins v. Harrison Poultry, Inc.*, No. 2:07-cv-58, 2008 U.S. Dist. LEXIS 110597 (N.D. Ga. July 29, 2008) (unpublished), *Alford v. Perdue Farms*, No. 5:07-cv-87, 2008 U.S. Dist. LEXIS 24948, at *18-19 (M.D. Ga. 2008) (unpublished), *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007), *Kassa v. Kerry, Inc.*, 487 F. Supp. 2d 1063 (D. Minn. 2007), and *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994).

**B.**     ***Mitchell, et al. v. Smithfield Packing Company, Inc.*, United States District Court for the Eastern District of North Carolina, 4:08-cv-00182-H**

      1.     <u>Defendant contends that Plaintiffs' claims are precluded by 29 U.S.C. § 203(o).</u>

There was a collective bargaining agreement covering employees at the K-1 (*Mitchell*) plant. Defendant contends that there was a custom, policy and practice under the collective bargaining agreement (within the meaning of 29 U.S.C. § 203(o)) defining and limiting the pay for changing clothes and washing to 5 minutes per day. Smithfield therefore expects to win the FLSA claims outright because of 29 U.S.C. § 203(o). Defendant contends that clear Fourth Circuit authority supports the Company's position. *Sepulveda v. Allen Family Foods*, 519 F.3d 2009 (4th Cir. 2011). The Court previously ruled in favor of Smithfield Packing Company on the § 203(o) issue in another case – *Hosler v. Smithfield Packing Co., Inc.* In negotiating this settlement, the Parties are also aware of a case currently pending before the United States

Supreme Court (*Sandifer v. U.S. Steel,* U.S. Supreme Court, No. 12-417), which is expected to address the applicability of Section 203(o) to donning and doffing activities.

Defendant contends that it will prevail as to the state law "payday" claim for this same reason. Because the time is defined as not "hours worked" under the FLSA, and because the NCWHA follows the FLSA definitions, the NCWHA claim also fails. According to the Defendant, under North Carolina law, the principles of the FLSA apply in the application of the North Carolina Wage & Hour Act ("NCWHA"). *See, e.g., Chandler v. Cheesecake Factory Restaurants, Inc.*, 239 F.R.D. 432, 435 (M.D.N.C. 2006) ("the NCWHA is expressly modeled after the FLSA, references to the FLSA are scattered throughout the NCWHA"); N.C. Gen. Stat. § 95-25.2(7). The North Carolina Administrative Code explicitly provides:

> [T]he judicial and administrative interpretations and rulings established under the federal law as a guide for interpreting the North Carolina law. Such federal interpretations will therefore be considered persuasive and will carry great weight as a guide to the meaning of the North Carolina provisions and *will be controlling for enforcement purposes.*

13 N.C. Admin. Code 12.0103 (emphasis added). The judge in this case has reaffirmed this principle in *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, No. 4:08-CV-134-H(3), 2011 U.S. Dist. LEXIS 20473, at *35 (E.D.N.C. Mar. 1, 2011) (unpublished) (Howard, J.) ("Under North Carolina law, therefore, this court must follow the administrative and judicial interpretations of the FLSA when considering whether Plaintiffs' promised wages have been paid under the NCWHA").

    2.    <u>Defendant contends that Plaintiffs' claims for additional pay based on NCWHA § 95-25.6 are preempted by § 301 of the Labor Management Relations Act.</u>

Defendant contends that Plaintiffs' payday statute claims are preempted by § 301 of the Labor Management Relations Act. Defendant contends that similar claims have been found to

be pre-empted, citing *Buckner v. United Parcel Serv.*, No. 5:09-cv-411-BR, 2010 U.S. Dist. LEXIS 74102 * 6-8 (E.D.N.C. July 21, 2010) (unpublished), *Byard v. Verizon W. Va.*, No. 1:11-cv-132, 2012 U.S. Dist. LEXIS 44339 *16 (N.D.W. Va. March 30, 2012) (unpublished), *Elswick v. Daniels Elec., Inc.*, 787 F. Supp. 2d 443, 447-48 (S.D. W. Va. 2011), *Arnold v. Cabot Corp.*, 165 L.R.R.M. 2179, 2184 (N.D. W. Va. 2000), *Barton v. Creasy Co. of Clarksburg*, 718 F. Supp. 1284 (N.D. W. Va. 1989), *Anselmo v. West Paces Hotel Group*, No. 9:09-2466-MBS, 2011 U.S. Dist. LEXIS 29520 *20) (D.S.C. March 18, 2011) (unpublished), *Jones v. C&D Technologies*, No. 1:11-cv-01431-JMS-DKL, 2012 U.S. Dist. LEXIS 122033 * 11 (S.D. Ind. Aug. 28, 2012) (unpublished); *Carter v. Tyson Foods, Inc.*, No. 3:08-cv-209-JVB, 2009 U.S. Dist. LEXIS 116275 *16 (N.D. Ind. 2009); *Townsend v. BC Natural Chicken LLC*, No. 06-4317, 2007 U.S. Dist. LEXIS 8282. *4, 15-19 (E.D. Pa. Feb. 2, 2007) (unpublished); *Murray v. Tyson Foods, Inc.*, No. 08-4001, 2009 U.S. Dist. LEXIS 9278, (C.D. Ill. February 9, 2009) (unpublished); and *Gonzalez v. Farmington Foods, Inc.*, 296 F. Supp. 2d 912, 935-936 (N.D. Ill. 2003).

Defendant further contends that Plaintiffs' § 95-25.6 "payday" claim is similarly preempted as a matter of law because in order to decide whether "wages" have "accru[ed]" to them for donning and doffing, the court or a jury would have to interpret the terms, customs, and practices of the CBA under ordinary principles of federal labor law, including the "common law of the shop" – but federal labor law forbids them from doing so.

At best, Plaintiffs' claims would require the Court to resolve a complex issue of federal labor law for which the outcome is uncertain. In fact, in a very recent case decided in October 2013, a District Court for the Southern District of Iowa found that a plaintiff's claims under the Iowa Wage Payment and Collection Law were preempted by Section 301 of the Labor

Management Relations Act, *Edwards v. Tyson Foods, Inc.*, No. 4:08-cv-00113-JAJ-TJS (S.D.

Iowa, Oct. 30, 2013) (unpublished).

C.  ***Horne, et al. v. Smithfield Packing Company, Inc.***, **United States District Court for
   the Eastern District of North Carolina, 5:09-CV-00042-H**

   1.  <u>Defendant contends that the law does not require it to compensate Plaintiffs for
       donning and doffing sanitary and protective clothing that may be worn to and
       from home.</u>

Smithfield contends that it does not have the obligation to pay employees for time spent

donning and doffing items that they can wear to and from home.  As the Department of Labor

states:

> [D]onning and doffing of required gear is within the continuous
> workday only when the employer or the nature of the job mandates
> that it take place on the employer's premises.  *It is our
> longstanding position that if employees have the option and the
> ability to change into the required gear at home, changing into
> that gear is not a principal activity*, even when it takes place at the
> plant. See FOH [Field Operations Handbook] section 31b13
> (dressing at home is not compensable).

DOL Wage & Hour Advisory Mem. No. 2006-2 (May 31, 2006), available at

http://www.dol.gov/whd/FieldBulletins/AdvisoryMemo2006_2.htm (emphasis added).

Defendant contends that, consistent with the USDOL's position, numerous courts

throughout the country have held that donning and doffing of items on an employer's premises is

not compensable when the employee is able to don and doff such items outside the employer's

premises.  *See, e.g., Bamonte v. City of Mesa*, 598 F.3d 1217, 1220, 1219-20 (9th Cir. 2010)

(donning and doffing was not compensable when plaintiffs had the option and ability to don and

doff the items at home; "[a]lthough logical reasons exist for [plaintiffs] not to avail themselves of

the at-home option, such as comfort, safety concerns, and exposure of family members to certain

substances, these reasons reflect preferences rather than mandates"); *Dager v. City of Phoenix*,

No. 09-15356, 2010 U.S. App. LEXIS 10981, at *2-*3 (9th Cir. May 28, 2010) (unpublished) (donning and doffing of uniforms and protective gear was not compensable despite the fact that the defendant maintained lockers for storage of the uniforms and equipment because plaintiffs were not required to don and doff the items on the employer's premises); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 (10th Cir. 1994) (donning and doffing of hard hats, ear plugs, safety glasses, and safety shoes that employees of a meat processing plant could wear to and from the worksite was not "work"); *Bagrowski v. Maryland Port Authority*, 845 F. Supp. 1116, 1121 n.6 (D. Md. 1994) (plaintiffs were not entitled to compensation for putting on items where many employees "came to work in their uniforms and nothing prevented [them] from doing so"); *Lesane v. Winter*, 866 F. Supp. 2d 1, 13 (D.D.C. 2011) ("[T]he Court sees no reason to disagree with the DOL's view that employees who genuinely have the 'option and ability' to change clothes at home should not be compensated for the time it takes to do so"); *Levias v. Pac. Maritime Ass'n*, 760 F. Supp. 2d 1036, 1057 (W.D. Wash. 2011) ("Where employees have the option and ability to don the protective gear at home, regardless of whether it is their preference to don and doff at the workplace, this activity cannot be considered integral and indispensable, i.e., necessary to the principal work performed . . .") (internal citations and quotations omitted); *Musticchi v. City of Little Rock*, 734 F. Supp. 2d 621, 626-27 (E.D. Ark. 2010) (granting summary judgment for the employer on the grounds that donning, doffing, and related activities that are permitted to occur at home are non-compensable preliminary and postliminary activities); *Haight v. Wackenhut Corp.*, 692 F. Supp. 2d 339, 345 (S.D.N.Y. 2010) (plaintiffs were not entitled to compensation for time spent donning and doffing hardhats, safety glasses, and steel-toed boots; plaintiffs were "not required to change on [the] employer's premises and have the option of changing at home"); *Reed v. County of Orange*, 716 F. Supp. 2d 876 (C.D. Cal. 2010) (because the plaintiffs "can don

and doff their uniforms at home and still perform their . . . duties . . . the donning and doffing . . . is not an integral and indispensable part of [the] job"); *Mory v. City of Chula Vista*, No. 07-CV-462 JLS (WVG), 2010 U.S. Dist. LEXIS 100777, at *17 (S.D. Cal. Sept. 24, 2010) (unpublished) ("Because Plaintiff had the option to change into and out of her uniform and related gear at home and only changed at the police station as a matter of preference, Plaintiff's on-premises donning and doffing did not constitute integral and indispensable work activities"); *Albrecht v. Wackenhut Corp.,* No. 07-CV-6162, 2009 U.S. Dist. LEXIS 88073, at *26 (W.D.N.Y. Sept. 24, 2009) (unpublished) (as a matter of law, donning and doffing of uniforms and gear were non-compensable because the "Plaintiffs were free to leave the site in their uniforms, with most of the equipment they were issued by Wackenhut"); *Adams v. Norman W. Fries, Inc.,* No. 607CV017, 2009 U.S. Dist. LEXIS 95212, at *22-*23 (S.D. Ga. Feb. 23, 2009) (unpublished); *Wright v. Pulaski*, No. 4:09-cv-65, 2010 U.S. Dist. LEXIS 87283, at *20-*23 (E.D. Ark. Aug. 24, 2010) (unpublished); *Constant v. Webre,* No. 07-3042, 2010 U.S. Dist. LEXIS 53425, at *11 (E.D. La. Jun. 1, 2010) (unpublished); *Abbe v. City of San Diego*, Nos. 05-cv-1629 and 06-cv-0538, 2007 U.S. Dist. LEXIS 87501, at *32-*35 (S.D. Cal. Nov. 9, 2007) (unpublished).

Defendant contends that if these cases were not settled, it would obtain summary judgment on this point. Defendant contends that the data shows that at least one-third to one-half of all employees wear or carry their helmets and hairnets to and from home, and that half or more wear their footwear to and from home. Defendant contends that Plaintiffs face significant obstacles to recover for time spent donning and doffing.

      2.    <u>Defendant contends that it provides sufficient compensation for donning and doffing activities at the Wilson facility.</u>

Smithfield contends that at the Wilson plant, during the entire relevant period, the Company has provided more than enough paid time for all of the donning and doffing that it required to be performed on the premises. The Company paid 5 minutes of "plug time" in addition to the normally-measured work time and Defendant contends that 5 minutes is in excess of the amount of time required to don those items and to walk to the work station in this rather small facility. Defendant contends that all of the doffing of those items, and pre-doffing walking, is on paid time.

**D.** ***Harris, et al. v. Smithfield Packing Company, Inc.*, United States District Court for the Eastern District of North Carolina, 4:09-cv-00041-H**

Defendant contends that it has provided sufficient compensation for donning and doffing activities at the K-2 facility at all relevant times. The K-2 plant is a modern state of the art facility, which opened in the late spring of 2006 and became fully operational during the fall of 2006. The K-2 plant is also small and efficient with relatively little man-power. Only 235 production employees have worked in this facility during most of the time relevant to Plaintiffs' claims.

The K-2 plant is divided into two mirror imaged sides: the Raw Side and the RTE (Ready to Eat) Side. After walking through the front entrance of the facility, employees enter either the Raw Side or the RTE Side. There is one open, unisex locker room on each side where employees don pants and a smock over their street clothing. Employees at the K-2 facility also wear a hair net, beard net (if they have facial hair), ear plugs, and steel toed boots. An Employee Clean Room ("ECR") machine is located at the front of each side of the plant. Employees wash, sanitize, and dry their hands in the ECR machine, which simultaneously scrubs employees' boots as they walk. Between each ECR and department entrance, employees walk through a foot bath with sanitizer solution.

Employees don and doff other items during their paid shifts on the production floor. For example, employees who move product trees are required to wear safety glasses but only when pushing product trees. Therefore, tree pushers acquire safety glasses from the office in their department when they push trees. Employees who pour chemicals don face shields, which are stored along with the chemicals during their paid shift. Similarly, supervisors distribute cut resistant gloves to knife wielding employees. These employees are only required to wear a cut resistant glove when they are using a knife. Knife wielding employees are only required to sanitize their cut resistant gloves if they pick something off the floor while wearing the glove. Cut resistant gloves are donned and doffed during the paid shift and sanitized at a sink in the department on paid time.

Smithfield pays 5 additional minutes of compensation to Raw Side production employees and 8 additional minutes of compensation to RTE side employees each day for donning, doffing, and related activities. After the *Alvarez* decision, Smithfield assessed its donning and doffing practices and decided to pay production employees those additional minutes. These additional minutes of pay were implemented to compensate employees for donning, doffing, and related activities, including related washing and sanitizing of sanitary and protective items. Therefore, in 2007, Smithfield implemented this change. The retroactive payment was disbursed in a lump sum. Most of the retroactive payments were paid in April and May of 2007.[2] In agreeing to this settlement, the Parties are aware of recent jury trials that have resulted in favorable verdicts for defendants. For example, in *Guyton v. Tyson Foods, Inc.*, No. 3:07-cv-00088-JAJ-TJS, (S.D. Iowa, April 2, 2013) (unpublished), the court upheld a jury verdict in favor of Tyson Foods on

---

[2] As explained below, the relevant period of limitations for Plaintiffs' FLSA claim is no earlier than March 19, 2007. Because Smithfield paid retroactively to the opening of the facility, Smithfield contends that there is no relevant time period in which Smithfield did not compensate its employees at the K-2 facility for donning, doffing, and related activities.

claims arising under both the FLSA and the Iowa Wage Payment and Collection Law. In this case, as in Smithfield's facilities, employees were paid additional minutes of compensation for donning, doffing, and related activities.

## VI. CONCLUSION

For all of the foregoing reasons, the Parties submit that the settlement negotiated between them resolving these matters is fair, reasonable, adequate, and the result of their good faith bargaining. Accordingly, the Parties request that the Court give preliminary approval to the settlement, authorize the Parties to proceed with the notice and claims process, and set a Final Approval hearing for a date at least 120 days after the date of the order of preliminary approval (said interval to allow time for completion of the notice and claims process). A proposed order of preliminary approval is submitted with this Joint Motion.

Respectfully submitted this 9th day of December, 2013.

| | |
|---|---|
| */s/H. Forest Horne, Jr.* | */s/D. Christopher Lauderdale* |
| H. Forest Horne, Jr., NCSB # 16678 | D. Christopher Lauderdale |
| Hoyt G. Tessener, NCSB #16068 | JACKSON LEWIS P.C. |
| G. Christopher Olson, NCSB #21223 | One Liberty Square |
| MARTIN & JONES, PLLC | 55 Beattie Place |
| 410 Glenwood Ave., Suite 200 | Greenville, SC 29601 |
| Raleigh, NC 27603 | Phone: (864) 232-7000 |
| Phone: (919) 821-0005 | Fax: (864) 235-1381 |
| Fax: (919) 863-6083 | lauderdc@jacksonlewis.com |
| hfh@m-j.com | |
| hgt@m-j.com | L. Dale Owens |
| gco@m-j.com | JACKSON LEWIS P.C. |
| | 1155 Peachtree Street, NE, Suite 1000 |
| **ATTORNEYS FOR PLAINTIFFS** | Atlanta, GA 30309-3600 |
| | Phone: (404) 525-8200 |
| | Fax: (404) 525-1173 |
| | owensd@jacksonlewis.com |

Melissa R. Davis, NCSB #21655
JACKSON LEWIS P.C.
1400 Crescent Green, Suite 215
Cary, NC 27518
Phone: (919) 854-0044
Facsimile: (919) 854-0908
Robin.davis@jacksonlewis.com

**ATTORNEYS FOR DEFENDANT**